ROGERS *et al. v.* GREAT SOUTHERN ACCIDENT & FIDELITY CO. *et al.*

EVANS, P. J. Under the allegations of the petition, the plaintiffs are not entitled to the relief prayed.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*

FEBRUARY 15, 1912.

Equitable petition. Before Judge Bell. Fulton superior court. October 19, 1910.

R. L. Rogers, T. A. Maynard, and A. A. Camp, suing for themselves and others similarly situated, brought their petition against the Great Southern Accident and Fidelity Company, R. H. Cantrell, W. G. Chipley, J. R. Duval, Ed. S. Moore, and H. H. Bass, alleging as follows: In the early part of 1909 Cantrell and Chipley

conceived the scheme of promoting and subsequently organizing the Great Southern Accident and Fidelity Company, ostensibly to engage in the business of casualty and fidelity insurance, but really for the purpose of defrauding such of the public as could be induced to subscribe for the stock of the proposed corporation. About March 1, 1909, Cantrell, Chipley, and their associates, including Duval, procured from the secretary of State of Georgia a certificate of incorporation for the insurance company, authorizing it to do an insurance business, and providing that the capital stock of the company should be $500,000, divided into shares of $100 each. Petitioners are informed and believe that Cantrell and Chipley through a fraudulent arrangement with the other incorporators of the company took entire charge of promoting the organization of the company, by inducing subscriptions to the capital stock, collecting the subscriptions, and appropriating to themselves an enormous part of the collections; and after their efforts in this direction were exhausted and they had looted the fund collected as far as possible, having a fictitious organization of the company, they abandoned the company. It was never the intention of Cantrell and Chipley to raise the entire capital of the company, nor to legitimately organize the company and prosecute the business for the conduct of which the company was incorporated; but their purpose was to realize for themselves an enormous sum of money by persuading people to invest in the stock of the proposed corporation, by falsely representing that men of large experience and national reputation as insurance men were to be identified with the company and have control of its affairs, that the company would begin business with a capital stock of $500,000 and a surplus of equal amount, that the stock would ultimately have an actual value of 2 for 1, that the field of operation was broad and ample, and that the profits of the company would be enormous from the beginning and the value of the stock would rapidly enhance. By false representations of this character, Cantrell and Chipley contemplated collecting a very large sum of money, deducting therefrom 45 per cent. or other large percentage for themselves, paying such moneys as might be left to the provisional officers of the company, and leaving the company to its fate in the hands of incompetent and irresponsible men. Upon procuring a certificate of incorporation from the secretary of State, Cantrell and Chipley proceeded to canvass, by themselves

and other men employed by them, for the sale of the stock of the proposed company. In every instance they made false statements to induce subscriptions to the stock; painting the situation in such glowing terms that within the space of a few months they procured many subscriptions, selling each share for two hundred dollars, although their par value was only one hundred dollars; and representing that one hundred dollars for each share was to go to the capital account of the company and one hundred dollars to the surplus account. In this way they collected $325,000, representing $162,500 capital stock of the company. In nearly every instance a note was taken for the amount of the subscription, payable twelve months after date, to the subscriber's order, which note was placed at the subscriber's home bank, who was given a bonus of from 10 to 12 per cent. It was represented that the fund realized in any particular town would be left at the home bank, according to the plan adopted. In each case the bank, upon taking the note, issued its deposit slip in favor of the Great Southern Accident and Fidelity Company, showing the amount of the credit in the bank. The deposit slip was then sold at a considerable discount. Out of the cash realized in this way Cantrell and Chipley appropriated to themselves 45 per cent. or other large percentage. Petitioners were officers of the Winder Cotton Mills, and they subscribed to the stock of the proposed corporation under the persuasion of one Jackson, agent and representative of Cantrell and Chipley. Among the other false and fraudulent representations made to them in order to induce their subscription, it was promised to them by Jackson that the insurance company would immediately lend to the Winder Cotton Mills the sum of $35,000 at 6 per cent. interest, taking bonds of the mills as security. The mills were in need of a considerable sum; and had it not been for the representation of Cantrell and Chipley, through their agent Jackson, that the insurance company would make the loan, petitioners never would have subscribed for the stock. This promise was a large inducement, and was falsely made and it was never intended that the same should be carried out or performed; and in fact the insurance company refused to make such loan. Each of petitioners subscribed for five shares of the capital stock, executing a twelve-months note for $1,000, payable to his own order, indorsing the same, and the notes were deposited in the Winder Banking Company, the bank

receiving a bonus and issuing its time-deposit slips upon the plan above referred to. Each of the petitioners was issued his certificate of stock for five shares, par value $100; the additional $500 was to go to surplus account of the company. Afterwards, in the fall of 1909, as petitioners are advised and believe, a fictitious organization of the company was had in the office of the company in Atlanta, Georgia. The required capital stock of the company had not been subscribed, and those who had subscribed were not notified of the proposed meeting. The entire capital stock of the company was voted by Cantrell and Chipley and by J. H. Dean, who was previously represented to be president of the company, although the company had never been duly organized so far as petitioners are informed, and who was in fact a mere figurehead, without real interest in the company. At this meeting Dean was deposed as president and Cantrell elected in his stead. Thereafter there was an attempt to organize the company, although the required capital stock had never been subscribed. At the stockholders' meeting at which this organization was attempted, H. H. Bass was elected president, and J. R. Duval secretary, as petitioners are informed. The company obtained a license to do business in February, 1910. It has practically done no business; it was really never contemplated by Cantrell and Chipley and their associates that the company would ever be organized in good faith, or in good faith engage in business. Since obtaining the license to do business above referred to, the company has been paying out large salaries to its various officers, as to the amounts of which the plaintiffs are not advised. They are informed that Ed. S. Moore, as manager of the company, is drawing an annual salary of $10,000, and that Renfroe Jackson, as special agent, is paid $250 per month and all expenses. There are a number of other salaries paid, as petitioners are informed, all of which are out of proportion to the amount of business done by the company. The company is doing very little business, the expenses are heavy, and such assets as the company has are being rapidly impaired and wasted, and they will soon be exhausted and the company entirely wrecked, unless the assets of the company are seized by the court, conserved, and administered for the benefit of those entitled. Neither Cantrell nor Chipley is now interested in the company; none of the officers of the company are experienced and competent men to

conduct the business of such a company; not only are its assets being wasted as before indicated, but the company is carrying on business without being properly and legally organized; and Bass, Moore, and Duval are unauthorized to conduct the affairs of the company or receive or pay out the funds thereof. As an instance of the reckless manner in which the company is being managed, it is alleged that the defendants settled with a subscriber who claimed that he had been defrauded, by refunding his money, and paying a large sum, amounting to about $1,000, as fees to the attorneys in the case brought by him. They also refunded to another subscriber his money paid on stock subscription. Petitioners are informed that a large percentage of those induced to subscribe are claiming that their subscriptions were given under false and fraudulent representations, and a number of the subscribers have brought ordinary suits against the company for the money paid by them to Cantrell and Chipley for the company. "Under the circumstances aforesaid, petitioners are not indeed stockholders of said company, and they here and now repudiate as void their subscriptions to the stock of said company, being induced as aforesaid by false and fraudulent representations and promises. Most of the other persons who were induced to subscribe to the stock of said company are claiming that their stock subscriptions are likewise void, and that they are creditors of the company, and not stockholders; and upon information and belief petitioners aver that such is the fact, and that said company is therefore insolvent, its assets having been so largely looted, wasted, and dissipated as to leave the company without sufficient money to redeem such fraudulently induced subscriptions." Petitioners are informed that a large number of the notes given by subscribers to the stock for payment of their subscriptions have been and will be repudiated and that the subscribers will not pay the same, claiming them to be void because procured by fraud, all of which notes must be paid to the banks holding them by the company. Petitioners are informed that Cantrell and Chipley have now considerable property, purchased with the money illegally and fraudulently taken by them from subscribers to the stock of the company; but petitioners are not able to locate and describe these properties. They pray, that the defendants be enjoined from disposing of any of the assets or funds in their hands, belonging to the company or purchased with money put into the com-

pany by petitioners or others in like position, or in any way disturbing or changing the present status of the assets or the affairs of the corporation, or attempting to prosecute the business in the corporation's name; that Cantrell and Chipley be especially restrained from disposing of any of their properties in which they have invested the money illegally procured by them of petitioners and others in like situation, on subscriptions to the stock of the company; that a receiver be appointed to take charge of all the property of the various defendants; that Cantrell and Chipley be required to account to the receiver for all moneys illegally received by them from subscriptions of petitioners and others in like position, and that judgment be rendered in favor of the receiver against Cantrell and Chipley for the sum of money found to be due by them by such accounting.

The defendants filed their several demurrers, both general and special, upon numerous grounds, asserting, inter alia, that no cause of action is set out against any of the defendants; that the allegations with reference to the fraud of Cantrell and Chipley in no wise affected the corporation; that no specific acts of fraud were charged; that the plaintiffs, having paid no money for the stock, and having repudiated the notes given therefor, were neither creditors nor stockholders and had no interest whatever in the company; that there was a misjoinder of parties; and that the plaintiffs, if they were stockholders, were estopped from attacking the validity of the organization of the company, as it had complied with the laws with reference to the organization of insurance companies, and had been recognized by the State and given a license to do business as an insurance company. The petition was dismissed on general demurrer, and the plaintiffs excepted.

*Anderson, Felder, Rountree & Wilson,* for plaintiffs.

*Robert P. Jones, E. P. Upshaw, Tye, Peeples & Jordan,* and *John L. Hopkins & Sons,* for defendants.